UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------X
```

WILLIAM STRAWDER,                            :

                Petitioner,     :     08 Civ. 07027 (GBD) (DF)

  -against-                  :     **REPORT AND**
                                  **RECOMMENDATION**

DALE ARTUS,                :

                Respondent.    :

```
-------------------------------------------------------------X
```

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

    *Pro se* petitioner William Strawder ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of Murder in the Second Degree, in violation of New York State Penal Law § 125.25[1].  (*See* Affidavit in Support of Motion to Amend Pleadings Pursuant to Rule 15(b) of the F.R.C.P., dated July 5, 2010 (Dkt. 21), at 1; *see also* Amended Petition for a Writ of Habeas Corpus, dated July 6, 2010 ("Amended Petition" or "Am. Pet.") (Dkt. 21), at 1.)  Petitioner is currently incarcerated at the Clinton Correctional Facility, in Clinton County, New York.[1]

    In his Amended Petition, Petitioner argues that his conviction should be vacated because: (1) the trial court prevented Petitioner from introducing certain exculpatory evidence; (2) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by delaying disclosure of this evidence; (3) the trial court admitted identification testimony without the requisite notice to the defense or a so-called "independent-source" hearing; (4) the trial court failed to provide a particular circumstantial-evidence charge to the jury; (5) Petitioner's trial counsel rendered ineffective assistance by failing to challenge the admission of identification and hearsay

---

[1]  http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130

testimony; and (6) Petitioner's appellate counsel rendered ineffective assistance by failing to

challenge the prosecution's purported change in legal argument on appeal regarding the

admissibility of certain hearsay statements. (*See* Am. Pet., § 8(f); *see also* Appendix In Support

of Answer Opposing Petition For a Writ of Habeas Corpus, undated ("Opp. App'x"), Ex. A

(Brief for Defendant-Appellant, dated June 2006 ("Pet. App. Br."), at 17, 25); *id.*, Ex. C

(Supplemental *Pro Se* Brief, dated Sept. 2006 ("Pet. Supp. App. Br.")); Supplemental Answer

and Appendix Opposing Petitioner's Amended Petition for Writ of Habeas Corpus, dated

Sept. 28, 2010 ("Supp. Answer") (Dkt. 26), Ex. A (Affidavit in Support of Application for a Writ

of Error *Coram Nobis*, dated Apr. 7, 2009 ("*Coram Nobis* Pet."), at 5-6).)

## BACKGROUND

### A.     Factual Background

#### 1.     Stabbing Attack on Sheppard

On the night of May 19, 2001, Reuben Tirado ("Tirado") was working as a security

officer at a nightclub on West 30th Street between Seventh and Eighth Avenue in Manhattan.

(*See* Trial Transcript, Vol. 2, dated June 23, 2003 ("Trial Tr. II") (Dkt. 13), at 343-45.)  At

various points throughout the evening, Tirado saw Petitioner and Petitioner's acquaintance,

Tonnie Sheppard ("Sheppard"), entering and leaving a nearby recording studio.  (*See id.*, at 346,

348-49, 375-76.)

That same night, Stacey Elkes ("Elkes") arrived at the recording studio to meet a friend

and, while sitting in a waiting room, saw Sheppard come out of a recording room, followed by

Petitioner.  (*See id.*, at 15-21.)  While speaking on her cellular phone, Elkes heard Sheppard and

Petitioner having a conversation in the background.  (*See id.*, at 19-21.)  As that conversation

2

grew more contentious, Elkes began to feel uncomfortable and left the room.  Upon returning, she found the waiting room empty.  (*See id.*, at 20-24.)

At 1:00 a.m., Tirado was standing outside of his nightclub, when he saw Sheppard run by and heard him say, "I got stabbed," as Petitioner chased after him.  (*See id.*, at 346-53.)  When the two ran across the street, Sheppard was hit by a car, but was able to reach the other side, where he collapsed.  (*See id.*, at 354-55.)  Although Tirado's view was then obstructed by a car, he was still able to see that Petitioner was standing over Sheppard where he fell, and that Petitioner was moving his arms up and down.  (*See id.*, at 355.)  Tirado also testified that he heard Petitioner say to Sheppard, "You dissed me."  (*See id.*, at 355-56.)

Meanwhile, in a van nearby, Octavio Petrucelli ("Petrucelli"), a performer at the nightclub, heard the car accident and then saw Sheppard limping and holding his hand on his chest.  (*See id.*, at 63-64, 77-78.)  According to Petrucelli, Petitioner followed Sheppard, while talking and making aggressive gestures.  (*See id.*, at 63-64.)  Petrucelli heard Sheppard say, "I can't believe you stabbed me."  (*See id.*)  Petrucelli also saw Petitioner lift up Sheppard's shirt to see the wound, and he then saw Petitioner flee.  (*See id.*, at 67-68, 92-93.)

After being alerted to the attack, Timothy Regan ("Regan"), a patrolman at a nearby firehouse, rushed to the crime scene and administered first aid.  (*See id.*, at 175.)  After police arrived, an ambulance brought Petitioner to St. Vincent's Hospital, where he died the following night.  (*See id.*, at 104-05, 235.)  The Medical Examiner's Office subsequently confirmed that Sheppard died of a stab wound.  (*See id.*, at 149.)

### 2.     Police Investigation and Arrest

After the ambulance left with Sheppard, the police secured the crime scene and entered

the recording studio to investigate.  (*See id.*, at 108-10.)  At the studio, police spoke with Elkes

and found, in a stairwell, a wooden knife handle and a separated knife blade stained with blood.

(*See id.*, at 111, 115, 251-52.)  That night's investigation also yielded, as potential evidence, a

hooded sweatshirt, a green hat, and a beer bottle.  (*See id.*, at 201, 305-06.)  Police, subsequently,

attempted unsuccessfully to obtain fingerprints from the knife handle, but did not attempt to dust

the blade for prints, due to the blood stains.  (*See id.*, at 111, 115, 251-52.)

While officers were attempting to locate Petitioner at his residence, Petitioner made two

calls to the police precinct from a telephone booth.  (*See id.*, at 445-47.)  After tracing the calls,

police waited for Petitioner at the same telephone booth the next day and, between 6:00 and 6:30

p.m., spotted Petitioner, who attempted to flee as soon as the police approached.  (*See id.*, at

272-74, 448.)  After being apprehended and placed in a police car, Petitioner stated, "If they

don't pick me out of a line-up, can I go home?"  (*See id.*, at 277.)  At the precinct, both Elkes

and Tirado identified Petitioner in separate line-ups.  (*See id.*, at 28-29, 32, 364-65, 458-61.)

### B.     Procedural History

#### 1.     Pretrial Argument Regarding
####         Potentially Exculpatory Evidence

Petitioner alleges that, in the initial omnibus motion filed by his trial counsel, his counsel

requested, pursuant to *Brady*, that the prosecution be directed to produce all information and

evidence that may have had the tendency to exculpate Petitioner.  (*See* Pet. App. Br., at 6; *see*

*also* Pretrial hearing and voir dire transcript, dated June 19, 2003 ("6/19/03 Proceedings Tr.")

(Dkt. 12), at 9-11.)  It was not until trial commenced, however, when the case had already been

4

pending for two years, that the prosecution finally provided to the defense potentially exculpatory evidence in the form of two witness statements and a voucher regarding Sheppard's own possession of a knife. (*See* Pet. App. Br., at 10; 6/19/03 Proceedings Tr., at 11-15.) Both witness statements indicated that Sheppard had been holding a knife as he ran from the recording studio on the night of the attack. (*See* 6/19/03 Proceedings Tr., at 11-15.) The voucher was consistent with these statements, as it indicated that an open knife was found in Sheppard's pocket at the hospital. (*See id.*) At a pretrial hearing, during which Petitioner's counsel first raised the possibility of introducing the knife into evidence, the court deferred ruling on the knife's relevancy. (*See id.*) When this issue was raised again following *voir dire*, the court noted that, "[i]f no witnesses put that knife in the deceased's hand, it's not relevant," but again deferred a final decision. (*Id.*, at 297-98.)

Finally, after the commencement of trial, the court found that the knife had "no connection to the actual [criminal] incident" and, as such, was "not relevant" unless the defense was able to draw such a connection. (Trial Transcript, Vol. 1, dated June 23, 2003 ("Trial Tr. I") (Dkt. 11), at 2, 7.) The prosecution further added that the two witnesses, who had previously told police that Sheppard was holding a knife, had since recanted their statements, one by explicitly stating that Petitioner, not Sheppard, was the one holding a knife. (*See id.*, at 2-3.) The defense then argued unsuccessfully that the fact that an open knife was recovered from Sheppard was relevant to a possible justification defense and that the court's refusal to admit the knife into evidence violated Petitioner's Sixth Amendment right to confront the witnesses against him. (*See id.*, at 7-9.)

5

### 2.    Trial

In his opening statement, the prosecutor suggested that Sheppard possessed no knife throughout the incident. (*See id.*, at 35.) The prosecutor then elicited testimony from Tirado (*see* Trial Tr. II, at 351), Elkes (*see id.*, at 17), Petrucelli (*see id.*, at 63, 71), Regan (*see id.*, at 176-77, 180), and Michael Wynne ("Wynne"), the first police officer at the crime scene (*see id.*, at 104), that they did not see Sheppard holding any object in his hands on the night of the attack.

Following this testimony, defense counsel moved again to introduce the knife that had been found in Sheppard's possession, arguing that the prosecution had misled the jury into believing that Sheppard was unarmed. (*See id.*, at 220.) Counsel argued that, at a minimum, Petitioner should be permitted to introduce testimony regarding the voucher for the knife. (*See id.*, at 221.) The Court rejected this argument, but permitted the defense to call the two witnesses who had initially claimed to have seen Sheppard carrying a knife. (*See id.*, at 222.) Petitioner's counsel chose not to call the witnesses. (*See generally id.*)

In summation, defense counsel questioned the reliability of the prosecution's witnesses (*see, e.g., id.*, at 496-98) and argued that the prosecution had failed to establish that Petitioner possessed the requisite state of mind for the charges (*see, e.g., id.*, at 508-09) or even to establish how or where the stabbing occurred (*see id.*, at 484-86, 490). The prosecutor responded to these arguments in his own summation (*see id.*, at 518-23 (addressing Petitioner's state of mind), 525-29 (addressing the reliability of witness), 530-34 (describing the circumstances of the stabbing)), but further emphasized that, based on the testimony at trial, Petitioner did not have a knife in his hand, and there was no evidence that Petitioner had acted in self-defense (*id.*, at 520, 537).

The jury proceeded to convict Petitioner of second-degree murder. (*See id.*, at 601.) Before sentencing, however, Petitioner moved to vacate the verdict, pursuant to Section 330.30 of the New York Criminal Procedure Law, challenging the court's decision to deny introduction of the knife recovered from Sheppard. (*See* Sentencing Transcript, dated Nov. 18, 2003 ("Sentencing Tr.") (Dkt. 10), at 2; *see also* Pet. App. Br., at 16-17.) The court ultimately rejected this motion and sentenced Petitioner to 25 years to life in person. (*See* Sentencing Tr., at 14-15.)[2]

### 3.    Direct Appeal

On direct appeal, Petitioner's appellate counsel filed a brief on Petitioner's behalf, and Petitioner also filed a supplemental *pro se* brief. (*See generally* Pet. Supp. App. Br.; Pet. Supp. App. Br.) In his counseled brief, Petitioner raised two claims. First, Petitioner asserted that "the [trial] court's refusal to allow [Petitioner] to introduce evidence concerning an open knife found in the decedent's pants pocket, even after the prosecutor elicited from several witnesses that the decedent did not have anything in his hands, impinged [Petitioner's] [federal and state] constitutional right to present a defense." (Pet. App. Br., at 2; *see also id.*, at 17-24.) In connection with this Sixth Amendment claim, Petitioner argued that his trial counsel "could have used the open knife to argue that the stabbing was justified" or "that the stabbing was an accidental response to a confrontation." (*Id.*, at 20.) Petitioner further contended that, as a consequence of the trial court's erroneous exclusion of this evidence, Petitioner was not able to refute the prosecutor's suggestion – made in his opening and closing statements and during

---

[2] Although the transcript of the sentencing proceedings reflects that the court sentenced Petitioner to a prison term of 45 years to life (*see id.*), this appears to be a transcript error (*see* http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130).

witness examinations – that Sheppard was unarmed. (*See id.*, at 20-22.) Although Petitioner did not explicitly assert an independent prosecutorial-misconduct claim in this regard, he did draw the prosecutor's tactics into question, characterizing the prosecutor's strategy of implying that Sheppard was unarmed, when the prosecutor knew better, as "capitaliz[ing] on the court's error" and as "unseemly" prosecutorial conduct. (*Id.*, at 20, 21.)

The second claim asserted by Petitioner in his counseled brief also related to the knife found in Sheppard's possession, but this claim was framed as an alleged *Brady* violation. Specifically, Petitioner claimed that "the prosecutor's two-year delay in disclosing that the hospital found an open knife in the decedent's pants pocket and that two witnesses claimed to see the decedent holding a knife just after the stabbing was a prejudicial *Brady* violation requiring reversal." (*Id.*, at 2; *see also id.*, at 25-32.) Petitioner argued that this delayed disclosure "gravely prejudiced [Petitioner] and undermined the trial's fundamental fairness." (*Id.*, at 25.) Specifically, Petitioner noted that, by the time the prosecution disclosed the evidence, the two witnesses had changed their stories. (*See id.*, at 28.) Suggesting that this would not have happened, had the disclosure been made earlier, Petitioner argued that, "if [trial] counsel had been able to interview each witness in a timely fashion, he might well have been able to question the men on details that would have locked in their memories, and preserved them for trial." (*Id.*, at 29.)

In his supplemental *pro se* brief, Petitioner raised three additional claims. First, Petitioner claimed that the trial court violated state procedural law by "admitting identification testimony [of] Octavio Petrucelli, where [the prosecution] failed to file CPL § 710.30 notice, and [the] trial court failed to conduct [an] independent source determination." (Pet. Supp. App. Br., at 16.) Second, again invoking state law, Petitioner claimed that the "trial court erred in not

8

providing [a] requested circumstantial evidence charge," where, according to Petitioner, "only circumstantial evidence was adduced connecting [him] to [the] charge[d] offense." (*Id.*, at 24.) Finally, invoking both federal and state law, Petitioner claimed that his trial "counsel's representation was ineffective for failing to make appropriate objections to [the] admission of inadmissible evidence." (*Id.*, Point III.)[3]  On this last claim, Petitioner argued that his trial counsel should have moved to preclude Petrucelli's identification testimony, as well as the hearsay statement "attributed to Sheppard identifying [Petitioner] as his assailant." (*See id.*)

In affirming Petitioner's conviction, the Appellate Division found that the trial court had "properly exercised its discretion when it precluded [Petitioner] from introducing evidence that an open knife had been removed from the victim's pocket when he was brought to a hospital," as "[n]o witness testified that the victim had a knife at any point in the chain of events, and nothing in the circumstances of the case provided a reasonable basis on which to infer that the victim displayed or used a knife in any manner prior to being stabbed." *People v. Strawder*, 843 N.Y.S.2d 246, 247 (1st Dep't 2007).  Thus, according to the Appellate Division, "there was no violation of defendant's right to present a defense." *Id.* (citing Crane v. Kentucky, 476 U.S. 683, 689-90 (1986).)

As to Petitioner's Brady claim, the Appellate Division further held:

> [Petitioner] has not shown that he was prejudiced by any violation
> of the People's disclosure obligations under *Brady* . . . .  One week
> before trial, the People first disclosed the information about the
> knife in the victim's pocket, as well as police reports indicating
> that two witnesses saw the victim with a knife at some point
> immediately after the stabbing.  Although the prosecutor should

---

[3] In the copy of Petitioner's *pro se* appellate brief that has been submitted to this Court, any page numbers for the section that contains argument on Petitioner's third claim are not visible.

> have disclosed this information much earlier, there is no
> reasonable possibility that the delay affected the verdict . . . . As
> noted, there was no evidentiary foundation for admitting the knife
> or testimony about its recovery. As for the witnesses, defense
> counsel interviewed them and chose not to call them. Both
> witnesses disavowed or repudiated their statements to the police,
> and neither claimed his memory had faded. Therefore,
> [Petitioner's] claim that earlier disclosure might have made a
> difference is purely speculative.

*Id.* (citations omitted).

Moreover, according to the Appellate Division, Petitioner's "claims regarding the prosecutor's opening statement, questioning of witnesses and summation" – *i.e.*, any claims Petitioner may have been asserting regarding the impropriety of the prosecutor's suggestions that Sheppard was unarmed – were "unpreserved." *Id.* With respect to these claims, the Appellate Division noted that "[w]ere [the Appellate Division] to review them, [it] would reject them on the merits." *Id.*

Lastly, without discussion, the Appellate Division rejected the three claims raised by Petitioner in his *pro se* brief, stating simply that those claims were "without merit." *Id.* Accordingly, the court dismissed Petitioner's appeal in its entirety. *Id.*

By letters dated November 6, 2007, and November 26, 2007 to the New York Court of Appeals, Petitioner sought leave to appeal from the Appellate Division's decision. In his letters seeking leave, Petitioner raised the same arguments as those contained in his counseled and *pro se* appellate briefs. (*See* Opp. App'x, Ex. G (Letter to Hon. Judith Kaye from Barbara Zolot, Esq., dated Nov. 26, 2007 ("11/26/07 Ltr.")); *id.*, Ex. H (Letter to Hon. Robert S. Smith from Petitioner, dated Nov. 6, 2007 ("11/6/07 Ltr.")). On December 18, 2007, the New York Court of Appeals denied Petitioner's request for leave to appeal. *See People v. Strawder*, 9 N.Y.3d 1010 (2007).

10

4.   **Original Petition for Writ of Habeas Corpus**

Petitioner filed his original habeas Petition on July 14, 2008. (*See* Petition Under 28 USC § 2254 for Writ of Habeas Corpus by Person in State Custody, dated July 14, 2008 ("Petition" or "Pet."), at 1.[4])  In the original Petition, Petitioner argued that (1) the trial court improperly excluded evidence concerning the open knife found in Sheppard's pocket and witness statements indicating that Sheppard was holding a knife while he was being chased (*see id.*, at 2, 5-12); (2) the prosecution improperly delayed disclosure of this knife and these witness statements (*see id.*, at 2-3, 12-15); (3) the trial court admitted identification testimony without requiring the prosecution to provide state-required notice to the defense and without conducting an "independent source" hearing (*see id.*, at 3, 15-18); (4) the trial court improperly failed to provide a circumstantial-evidence charge (*see id.*, at 3, 18-21); and (5) trial counsel rendered ineffective assistance by failing to challenge the absence of notice and a hearing regarding anticipated identification testimony, by failing to object to "improper bolstering of identification," and by failing to object to hearsay testimony (*see id.*, at 3, 21-24).

5.   **Petition for Writ of *Coram Nobis***

By papers dated April 7, 2009, Petitioner raised a claim of ineffective assistance of appellate counsel in an application to the Appellate Division for a writ of error *coram nobis*. (*See Coram Nobis* Pet., at 5-6.)  Petitioner's claim focused on the trial court's admission of testimony by Petrucelli that, following the stabbing, he heard Sheppard tell Petitioner, "I can't believe you stabbed me." (*See* Trial Tr. II, at 63-64.)  According to Petitioner, the prosecution

---

[4] In this circuit, habeas papers are generally considered "filed" as of the date the papers are handed to prison officials for mailing. *See, e.g., Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).  Absent any evidence to the contrary, this should be deemed to have occurred on the day the petition is dated. *See Davis v. Keane*, 9 F. Supp. 2d 391, 392 n.4 (S.D.N.Y. 1998).

argued, at trial, that this hearsay statement by Sheppard was properly admissible as a "dying

declaration," but the prosecution then shifted its legal theory on appeal, and sought to defend the

statement's admission on the ground that it was an "excited utterance." (*See Coram Nobis* Pet.,

at 6-10.) Petitioner suggested, as he had on direct appeal, that his trial counsel's performance

was inadequate because counsel had failed to object to the admission of this hearsay statement,

in the first instance. (*See id.*) In addition, in an argument that was more central to his *coram*

*nobis* application, Petitioner asserted that his appellate counsel's performance was

constitutionally flawed because, on appeal, his counsel failed to recognize the prosecution's

belated shift in argument or to point it out to the Appellate Division. (*See id.*, at 6-10.)

Petitioner also argued that, in any event, the prosecution never established the requisite state of

mind for either of the hearsay exceptions it invoked. (*See id.*, at 7-10.)

　　　　The Appellate Division denied Petitioner's *coram nobis* petition on June 30, 2009,

without any substantive discussion of Petitioner's arguments. (*See* Supp. Answer, Ex. C

(Appellate Division decision on *coram nobis* petition, dated June 30, 2009 ("6/30/09 *Coram*

*Nobis* Decision")).) On November 12, 2009, the New York Court of Appeals denied Petitioner's

request for leave to appeal from the Appellate Division's decision. (*See* Supp. Answer, Ex. D

(cited as *People v. Strawder*, 13 N.Y.3d 863 (2009).)

### 6.  Amended Petition for Writ of Habeas Corpus

　　　　Following rejection of his *coram nobis* petition, Petitioner moved for leave to amend his

habeas Petition so as to add the claims that he had raised in the *coram nobis* proceeding. (*See*

Affidavit in Support of Motion to Amend Pleadings Pursuant to Rule 15(b) of the F.R.C.P., date

July 6, 2012 (Dkt. 21).) Petitioner attached to his motion a proposed Amended Petition. (*See*

*id.*)  Respondent did not oppose the motion, and the Court granted Petitioner leave to amend on

July 29, 2010.  (*See* Dkt. 24.)[5]

In his Amended Petition, liberally construed, Petitioner now asserts the following six

claims for habeas relief:

> (1)    that he was denied a fair trial by the trial court's erroneous refusal to allow him to introduce evidence regarding the victim's possession of an open knife (*see* Am. Pet., 6-13);

> (2)    that the prosecution's belated disclosure of evidence related to the victim's knife constituted a *Brady* violation (*see* Am. Pet., at 13-17);

> (3)    that he was denied a fair trial by the trial court's erroneous admission of identification testimony, when the prosecution had not provided the "notice of intent" purportedly required by state law, and the court had not made an "independent source determination" (*id.*, at 17-19);

> (4)    that he was denied a fair trial by the trial court's failure to give the jury a circumstantial-evidence charge permitted by state law (*see id.*, at 19-22);

> (5)    that he was denied effective assistance of trial counsel when his trial counsel failed to object to the introduction of inadmissible identification and hearsay testimony (*see id.*, at 22-25); and

> (6)    that he was denied effective assistance of appellate counsel when his appellate counsel failed to challenge a belated

---

[5] By "Notice of Motion Pursuant to the F.R.C.P. Rule 7," dated July 27, 2010, Petitioner also sought "leave to expand the record," which the Court denied on April 19, 2011.  (*See* Notice of Motion Pursuant to Rule 7 of the F.R.C.P., dated July 27, 2010 (Pet. 7/27/10 Mtn.")) (Dkt. 30).)  In support of that motion, Petitioner attached an affidavit, which, in addition to reiterating claims contained in the Amended Petition, at one point invokes *Crawford v. Washington*, 541 U.S. 36 (2004), arguably raising – for the first time – a claim that the trial court's admission of Sheppard's incriminating statement violated Petitioner's Sixth Amendment right to confront adverse witnesses.  (Pet. 7/27/10 Mtn., at 8.)  As the Amended Petition, even liberally construed, does not allege a *Crawford* claim, the Court declines to consider such a claim here.

change in the prosecution's theory as to the admissibility of certain hearsay testimony (*see id.*, at 25-28).

## DISCUSSION

**I.   APPLICABLE LEGAL STANDARDS**

### A.   Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari" (citations omitted)).[6]

Here, Petitioner's habeas Petition was timely filed, as it was filed within one year of the date upon which Petitioner's conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). On December 18, 2007, the Court of Appeals denied Petitioner's request for leave to appeal the Appellate Division's affirmance of his conviction, *see People v. Strawder*, 9 N.Y.3d 1010, and, 90 days later, on March 17, 2008, Petitioner's conviction became final for purposes of the

---

[6] The limitations period may alternatively begin to run on the following dates: (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

14

relevant limitations period, *see Williams*, 237 F.3d at 151. The Petition was timely filed on

July 14, 2008 (*see* Pet.), less than one year from that date.

**B.     Exhaustion**

A federal court may not consider a petition for a writ of habeas corpus unless the

petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *see also*

*Picard v. Connor*, 404 U.S. 270, 275 (1971); *Doresy v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).

To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his

federal claims to the state courts, thereby affording those courts the "'opportunity to pass upon

and correct alleged violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275 (citing

*Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). There are several ways by which a

petitioner can fairly present a federal claim to the state appellate court, including by citing

federal cases, or the relevant provisions of the federal Constitution in his appellate brief. *See*

*Davis v. Strack*, 270 F.3d 111, 122-23 (2d Cir. 2001). Once the state courts are appraised of the

federal constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when

those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*,

41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

In this case, Petitioner has exhausted certain, but not all, of his federal habeas claims. In

particular, he exhausted his first and second claims – relating to the knife recovered from

Sheppard – by raising them in federal terms before the Appellate Division on direct appeal, and

then in his applications seeking leave to appeal to the Court of Appeals. (*See* Background

Section B(3), *supra*.) Petitioner also exhausted his fifth and sixth claims – for ineffective

assistance of trial and appellate counsel – by raising them on his direct appeal and/or in the later

*coram nobis* proceeding, and by then seeking to raise them to the Court of Appeals, as well.

15

(*See* Background Section B(3), (5), *supra*.)  Petitioner, did not, however, exhaust his third and fourth claims, to the extent they may be liberally construed to allege any federal constitutional violations arising from the alleged errors of the trial court in (a) admitting identification testimony that should have been precluded, and (b) failing to give the jury a particular circumstantial-evidence charge.  Although, in both his *pro se* appellate brief and in his application seeking leave to appeal to the Court of Appeals, Petitioner alleged that the trial court had committed these errors, he challenged the court's rulings exclusively in state-law terms (*see* Pet. Supp. App. Br.; 11/6/07 Ltr.), thereby failing to place the state appellate courts on notice that he was making any claim that the trial court's purported errors resulted in a violation of his federal constitutional rights.

Where, however, a petitioner presents an unexhausted habeas claim, but no longer has an available remedy in state court, that claim will be deemed exhausted.  *See Castille*, 489 U.S. 346, 351 (1989); *Bossett*, 41 F.3d at 828-29 (citations omitted); *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (citations omitted).  Here, as discussed further below, to the extent Petitioner has unexhausted federal claims, he no longer has any available avenue to present those claims in the state courts.  Accordingly, any such claims should be deemed exhausted, although deeming the claims exhausted will necessarily result in these claims being procedurally defaulted for purposes of habeas review, unless Petitioner is able to overcome the procedural bar.  (*See* Discussion Section B(1), *infra*.)

## C.    Standard of Review

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*,

261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision

finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the

claim advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA

provides that:

> [a]n application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim – (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established [f]ederal law,
> as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by "clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000).  An "unreasonable application" of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to "a set of facts different from those of the case in which the principle was

announced."  *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision,

however, "must have been more than incorrect or erroneous"; rather, "[t]he state court's

application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams v. Taylor*, 529 U.S. at 409).

Under this "difficult to meet" standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). In order to be entitled to habeas relief, the petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-87.[7]

Where this Court reaches the merits of a claim that has not been decided by the state court on substantive grounds, the pre-AEDPA *de novo* standard of review applies. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

---

[7] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 106-07 (2d Cir. 2008) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id.* (citing *Musladin*); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." (internal quotation marks omitted)).

## II.   PETITIONER'S CLAIMS

### A.   Claims 1 and 2:  Challenging the Prosecution's Conduct Regarding the Knife Recovered from Sheppard and the Trial Court's Exclusion of Evidence of the Knife

Petitioner's first two asserted claims for habeas relief are related, in that they both arise from the fact that an open knife was recovered from Sheppard at the hospital and that two witnesses initially gave statements placing a knife in Sheppard's hand immediately after the stabbing.  Petitioner variously argues, in these first two claims, that the prosecution violated its obligations under *Brady* by failing to make timely disclosure of this evidence; that the trial court erroneously refused to allow Petitioner to introduce evidence of the knife at trial; that the prosecutor took unfair advantage of this ruling by suggesting to the jury that Sheppard was unarmed at the time of the crime; and that the trial court compounded its error by continuing to reject Petitioner's request for admission of evidence of the knife after the prosecutor's remarks. (*See* Am. Pet., at 6-17.)  Liberally construed, Plaintiff's claims charge that this combination of events compromised his ability to present a defense, in violation of his Sixth Amendment rights, and deprived him of his due process right to a fair trial.  Yet, based on the record presented, Petitioner cannot prevail on these claims.

#### 1.   Delayed Disclosure of the Knife and Witness Statements

As part of Petitioner's first two claims, he alleges a *Brady* violation based on the prosecution's "two year delay" in disclosure of evidence (a) that the hospital found Sheppard to have an open knife in his pocket, and (b) that two witnesses had initially given statements indicating that they saw Sheppard with a knife immediately after the stabbing. (*See* Am. Pet., at 6, 13-17.)  By the time the prosecution disclosed the witness statements, the witnesses had recanted. (*See id.*, at 15.)  Suggesting that the witnesses' initial statements may have been true,

19

Petitioner argues that, if his counsel "had been able to interview each witness in a timely fashion," counsel might have been able to question the witnesses in a manner that would have helped "preserve[]" their memories of the details underlying those initial statements. (*Id.*, at 15.)

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Delayed disclosure may also constitute a violation of *Brady* where such late "disclosure afforded [the defense] insufficient opportunity to use the information." *Leka v. Portuondo*, 257 F.3d 89, 102 (2d Cir. 2001); *Smith v. Edwards*, No. 98 Civ. 7962 (DLC), 2000 WL 709005, at *6 (S.D.N.Y. May 31, 2000) (holding that "[u]nder *Brady*, the government has a due process obligation to disclose without delay evidence in its possession that is material to either guilt or punishment") (citation omitted). Information falling within the scope of the *Brady* rule includes "not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citing *Giglio v. United States*, 405 U.S. 150, 154-55 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The prosecution's obligation to make such disclosures, however, is limited to evidence that is "material." *Id.* at 256 (citing *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

"[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (internal quotation marks and citation omitted). "In other words, evidence is

20

material if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998) (quoting *Kyles*, 514 U.S. at 435). Impeachment evidence is material "where the witness in question supplied the only evidence linking the defendant to the crime" or "where the witness supplied the only evidence of an essential element of the offense." *Avellino*, 136 F.3d at 256-57 (citations omitted). Impeachment evidence is *not* material where it would "not likely . . . have changed the verdict," even though the evidence might have been "useful to the defense." *Giglio*, 405 U.S. at 154; *see also Blalock v. Smith*, No. 08 Civ. 7528 (JPO), 2012 WL 3283439, at *11 (S.D.N.Y. Aug. 13, 2012) (holding that "[w]hen undisclosed impeachment evidence is possibly useful to the defense, but not likely to have changed the verdict, the undisclosed impeachment evidence is "not material in the *Brady* sense") (internal quotation marks and citation omitted).

As set out above, the Appellate Division denied Petitioner's *Brady* claim on the merits. *Strawder*, 843 N.Y.S.2d at 248. The court found that there was "no evidentiary foundation" for admission of evidence of the knife at trial, and noted that Petitioner's counsel had interviewed the two witnesses and decided not to call them to testify. *Id.* For these reasons, the court determined that Petitioner's "claim that earlier disclosure [of evidence related to the knife] might have made a difference [was] purely speculative." *Id.* Under AEDPA, this Court must defer to the Appellate Division's decision, unless it set out rules that were contrary to the law enunciated in *Brady*, or demonstrated an unreasonable application of that law. 28 U.S.C. § 2254(d). Moreover, to the extent the state court made factual findings relating to the materiality of the *Brady* material in question, the court's findings must be viewed as presumptively correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see United States v.*

21

*Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (noting that "materiality" is a mixed question of fact and law).

In this instance, Petitioner has made no showing that the Appellate Division's decision was flawed, either in its factual basis or application of law. The only argument that Petitioner advances as to why the delay in the prosecution's disclosure caused him prejudice is that, had he had an earlier opportunity to question the witnesses, they might not have later recanted. Yet his counsel was given an opportunity to interview both witnesses and press them about the changes to their accounts of what they had seen, and Petitioner offers nothing to show that those changes were in any way uncertain. Certainly, he offers nothing to suggest that anything occurred during the period of the prosecution's delay that altered the witnesses' confidence in their initial statements. Overall, Petitioner has not provided the Court with any basis for finding the necessary "reasonable probability" that, had these statements been disclosed earlier, "the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-34 (internal quotation marks and citation omitted).

Moreover, based on the testimony of the witnesses who actually did testify at trial, it was reasonable for the trial court to exclude evidence of the existence of the knife itself, on relevance grounds. No witness testified at trial that Sheppard had displayed a knife prior to his being stabbed, and, presumably for strategic reasons, Petitioner's counsel opted not to call to the stand the two witnesses who had originally stated otherwise. On the record as presented, there was no evidence connecting Sheppard's knife to the crime, and Petitioner has not given any explanation as to why, if the fact of the knife's recovery had been disclosed at an earlier date, evidence of the knife would have become admissible at trial. Petitioner has thus failed to show that a more timely disclosure of the evidence in question would have likely altered the jury's verdict. *See*

22

*Burns v. Ercole*, No. 08 CV 8624, 2011 WL 3962499, at *5 (S.D.N.Y. Sept. 8, 2011) ("Even assuming that the State did fail to provide the report, it would not constitute a *Brady* violation because, as was discussed above, the ballistics evidence was not relevant to the murder charges."); *see also Gates v. Conway*, No. 05–CV–6337, 2009 WL 2180161, at *9-10 (W.D.N.Y. July 22, 2009) (dismissing *Brady* claim where "there [was] no reasonable probability that the outcome of [habeas petitioner's] trial would have been different had the alleged existing 911 tape been provided to him," as petitioner "never presented proof of his claim that the prosecution had possession of a 911 tape relevant to the charges").

Under the circumstances, the knife and witness statements cannot be said to have been material to the charges against Petitioner. *See Brady*, 373 U.S. at 87; *see also Payne v. LeFevre*, 825 F.2d 702, 707 (2d Cir. 1981) (holding that in order for a belated disclosure to be a *Brady* violation, three must be a "reasonable probability . . . sufficient to undermine confidence in the outcome" that the jury would have rendered a different verdict, had the evidence been disclosed on time). Certainly, given the stringent standard of review that this Court must apply to Petitioner's claim, *see Harrington*, 131 S. Ct. at 786, this Court cannot conclude that the Appellate Division "unreasonably" applied the principles of *Brady* in this case. Accordingly, under AEDPA, this Court should defer to the Appellate Division's decision rejecting Petitioner's *Brady* claim. *See* 28 U.S.C. § 2254(d).

### 2. Exclusion of Evidence

Petitioner also claims that the trial court's exclusion of evidence of the knife in Sheppard's possession was violative of Petitioner's due process rights. At a minimum, Petitioner argues that, after the prosecutor chose to assert in his opening statement that Sheppard was unarmed and to elicit testimony from four witnesses that Sheppard held no object in his

hands on the night of the attack, the trial court should have let Petitioner inform the jury that an open knife had in fact been found in Sheppard's pocket. (*See* Pet. App., at 6-11.)

As a general rule, state evidentiary rulings do not implicate federal law and are therefore not reviewable by federal courts. *See McKinnon v. Superintendent, Great Meadow Correctional Facility*, 422 Fed. App'x 69, 73 (2d Cir. 2011). Instead, such rulings are generally left to the discretion of the trial court. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). In a habeas proceeding, this court may review a state evidentiary ruling only if it was so egregious that it rendered the petitioner's trial fundamentally unfair, in violation of the due process clause of the 14th Amendment. *See Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973); *Rosario v. Kuhlman*, 839 F.2d 918, 924-25 (2d Cir. 1988) ("[E]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ [should] issue *only* where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial.") (emphasis in original) (quotation marks and citation omitted); *Copes v. Schriver*, No. 97 Civ. 2284 (JGK), 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997) (a habeas petitioner "must demonstrate that the alleged evidentiary error violated an identifiable constitutional right, and, in doing so, a petitioner bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude") (citation omitted).

Where, as here, the question is whether the exclusion of evidence violated a Petitioner's constitutional right to present a defense, the answer turns upon "whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir.1996) (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)). Thus, where excluded evidence would not have altered the jury's verdict, a petitioner is not entitled to habeas relief, even if exclusion was improper. *See Bowers v. Walsh*,

24

277 F. Supp. 2d 208, 224 (W.D.N.Y. 2003) (holding that, where the evidence that petitioner had sought to admit "arguably [wa]s only marginally relevant on the question of guilt," petitioner would not be entitled to habeas relief, even if that evidence was improperly excluded) (citing *Justice*, 90 F.3d at 47).

In this case, the Appellate Division affirmed the trial court's exclusion of evidence of the knife in Sheppard's possession, reasoning that the exclusion was proper, as "[n]o witness testified that the victim had a knife at any point in the chain of events, and nothing in the circumstances of the case provided a reasonable basis on which to infer that the victim displayed or used a knife in any manner prior to being stabbed." *Strawder*, 843 N.Y.S.2d at 247. This reasoning does not display error. *See, e.g.*, *Welch v. Artus*, No. 04–CV–205S, 2007 WL 949652, at *47-48 (W.D.N.Y. Mar. 29, 2007) (denying habeas based on finding that, where "evidence was neither relevant nor probative to the issues," the trial judge "was well within his discretion" to preclude petitioner from introducing that evidence).

In any event, even if the decision to exclude the evidence was erroneous, any error was not so egregious as to rise to the level of a federal constitutional violation. As Petitioner failed to establish, at trial, any actual connection between the knife at issue and the charged crime, this Court cannot conclude that the evidence of the knife's existence would have altered the jury's verdict, and thus rendered Petitioner's trial "fundamentally unfair." *Chambers,* 410 U.S. at 302-03. This is especially true in light of the strength of the evidence of Petitioner's guilt offered by the prosecution. *See Adams v. Khahaifa*, No. 08–CV–0121 (MAT), 2010 WL 2509970, at *5 (W.D.N.Y. June 16, 2010) (holding that the prosecution's "comments did not so profoundly affect the jury as to render the entire trial fundamentally unfair, particularly in light of other persuasive evidence demonstrating petitioner's guilt"). Absent a constitutional

dimension, Petitioner's claim based on the trial court's alleged evidentiary error is not
cognizable on federal habeas review, and should be dismissed.

### 3.    Prosecutorial Misconduct

It is unclear whether Petitioner is attempting to assert an independent claim that the
prosecutor's conduct – in allegedly taking advantage of the trial court's exclusion of evidence of
the knife by emphasizing to the jury that there was no evidence that Sheppard was armed – was
improper and sufficiently egregious to have deprived Petitioner of his due process right to a fair
trial.  Any such claim, however, would be procedurally barred from review in this proceeding,
given that, to the extent Petitioner challenged the prosecutor's conduct on direct appeal, the
Appellate Division rejected Petitioner's arguments on the ground that they were unpreserved for
appellate review. *See Strawder*, 843 N.Y.S.2d at 248.

### a.    The Claim Is Procedural Barred.

Federal habeas review of a claim is not available where the question has been decided by
a state court, and the state court's decision "rests on a state law ground that is independent of the
federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722,
729 (1991).  The state law ground may be substantive or procedural, *see id.*, such as a failure to
comply with a state preservation requirement.

In evaluating whether the state court has found a claim to be procedurally defaulted
under state law, this Court must look to the last reasoned state court opinion. *See Ylst v.
Nunnemaker*, 501 U.S. 797, 803 (1991).  To determine whether the state law ground on which
the state court rested was "truly an *independent* basis for decision or merely a passing
reference, . . . such reliance on state law must be clear from the face of the opinion." *Fama v.
Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (emphasis added) (internal quotation

marks and citation omitted); *see also Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997) (to

preclude federal review, the state court "must 'clearly and expressly state[] that its judgment

rest[ed] on a state procedural bar'" (citation omitted)).  To be deemed *adequate*, the state

procedural rule on which the court's decision was based must be a rule that is "firmly established

and regularly followed" by the state in question, *see Ford v. Georgia*, 498 U.S. 411, 423-24

(1991) (internal quotation marks and citation omitted), and must not have been "misapplied in

[the petitioner's] case in particular," *Cotto*, 331 F.3d at 240 (internal quotation marks and

citation omitted).

In this case, the last-reasoned state court decision is that of the Appellate Division, and it

is clear from the face of that decision that any prosecutorial-conduct claims that Petitioner may

have been trying to advance were rejected as unpreserved.  *See Strawder*, 843 N.Y.S.2d at 248.[8]

This is sufficient to demonstrate that the court's decision rested on an "independent" state-law

procedural ground.  *See, e.g., Guity*, 2007 WL 3284694, at *7-8 (citing *Harris v. Reed*, 489 U.S.

255, 265 (1989)).

Further, New York's preservation rule, requiring that parties raise specific

contemporaneous objections to a trial court's rulings before challenging them on appeal, *see*

N.Y.C.P.L. § 470.05(2), affords an "adequate" basis for the Appellate Division's decision.  *See*

*generally Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999); *Alvardo v. Burge*, No. 05 Civ. 1851

(AKH), 2006 WL 1840020, at *2 (S.D.N.Y. June 30, 2006) ("[F]ailure to object is not merely

technical; the requirement of timely objection allows the trial court to consider potential errors

---

[8] The fact that the Appellate Division also held that, if it were to review these claims, it would reject them, *id.*, does not alter the fact that the claim is procedurally barred from habeas review, *see Guity v. Ercole*, 07 Civ. 0728 (RPP), 2007 WL 3284694, at *7-8 (S.D.N.Y. Nov. 6, 2007).

and correct them in a timely fashion, when it most counts."). New York courts have repeatedly

held that, in the absence of objections during trial, a criminal defendant's due process and

prosecutorial-misconduct claims will be unpreserved for appellate review. *See People v. Harris*,

98 N.Y.2d 452, 491 (1998); *People v. Hooper*, 732 N.Y.S.2d 207, 208 (4th Dep't 2001), *lv.*

*denied* 97 N.Y.2d 755 (2002); *see also* Resp. Mem., at 11-10 (citing cases).

Finally, there is no basis for the Court to find that the state's preservation rule was

inappropriately applied in this case. *See Cotto*, 331 F.3d at 240. Indeed, there is nothing in the

record that suggests that the trial court had any opportunity to consider the prosecutorial-

misconduct claims that Petitioner may be seeking to raise here. On this record, these claims

should be held to be procedurally barred from federal habeas review. *See, e.g., Harripersaud v.*

*Barkley*, No. 04-CV-4035 (NGG) (KAM), 2006 WL 467951, at *8-11 (E.D.N.Y. Feb. 27, 2006)

(holding that due process claim based upon alleged prosecutorial misconduct was procedurally

barred where the Appellate Division had rejected that claim as unpreserved).

> **b.** **Petitioner Cannot Overcome the Procedural Bar.**

Where, as here, a claim has been procedurally defaulted, this Court cannot consider the

claim unless either (1) "the petitioner can demonstrate cause and prejudice for the default,"

*Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted); *accord Carmona v. United*

*States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir. 2001) (citations omitted), or (2) the "failure

to consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman*,

501 U.S. at 750 (internal quotation marks and citations omitted). In this instance, Petitioner

cannot overcome the procedural bar because he cannot demonstrate cause and prejudice, or a

fundamental miscarriage of justice.

28

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS) (JCF), 2001 WL 246437, at *8-9 (S.D.N.Y. Mar. 7, 2001); *Williams v. Artus*, 691 F. Supp. 2d 515, 525 (S.D.N.Y. 2010). Thus, cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (citation omitted). "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *accord Femia v. United States*, 47 F.3d 519, 524 (2d Cir. 1995).

Here, Petitioner has not even attempted to show any cause for the procedural default.[9] Thus, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

---

[9] Although Petitioner raises certain claims for ineffective assistance of trial counsel (*see* Discussion Section II(C), *supra*), he has not claimed that his counsel was ineffective for failing to preserve a prosecutorial-misconduct claim for appeal. Nor did Petitioner exhaust such a claim on his direct appeal, as would have been required before this Court could find that ineffective assistance constituted "cause" for his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986).

Nor has Petitioner demonstrated "a sufficient probability that [the] failure to review his federal claim[s] will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750). This exception to the procedural bar is extremely narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Further, actual innocence means factual innocence, not mere legal insufficiency. *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998). To show "actual innocence," Petitioner must produce new, reliable evidence sufficient to make a "colorable showing" that "it is more likely than not that no reasonable juror would have convicted [Petitioner]" in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). In this case, Petitioner has offered no new evidence demonstrating actual innocence. He thus cannot make an adequate showing to satisfy the "miscarriage of justice" exception to the procedural bar.

Accordingly, this Court is procedurally barred from reviewing Petitioner's prosecutorial misconduct claim, and I recommend that the claim be dismissed on this ground.

### B.     Claims 3 and 4: Claims Grounded in the Trial Court's Alleged Violations of State Law

In his third and fourth habeas claims, Petitioner raises two alleged errors of state law – first, in the trial court's admission of Petrucelli's identification testimony, and, second, in the court's failure to give a requested charge to the jury. (*See* Am. Pet., at 17-22.) To the extent Petitioner is continuing to advance these claims under state law, they are not cognizable on federal habeas review. *Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).

To the extent that the claims may be liberally construed as federal due process claims, they are unexhausted, procedurally barred and, in any event, without merit.

### 1. The Claims Should Be Deemed Exhausted and Held To Be Procedurally Barred.

As noted above, Petitioner's third and fourth claims are unexhausted, as Petitioner did not raise either of these claims in federal constitutional terms before the state courts. Petitioner already used his one opportunity for direct appeal, and thus any further direct appeal is foreclosed. *See* N.Y. Court Rules § 500.10(a) (permitting only one application for leave to appeal); *see also* N.Y. Crim. Proc. Law §§ 450.10 & 450.15 (allowing a petitioner one chance to appeal). Moreover, because these claims were capable of review on the record of the state proceedings, and thus could have been raised on direct appeal, Petitioner cannot now assert them collaterally before the trial court. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal).[10] As Petitioner now has no procedural recourse to New York's courts to advance these claims, they should be deemed exhausted. *See Bossett*, 41 F.3d at 828-29; *Grey*, 933 F.2d at 120-21.

When, however, a claim is deemed exhausted because of a procedural bar to state review, the claim is also procedurally barred from federal habeas review. Thus, the federal court may proceed with habeas review of the defaulted claim only if the petitioner can demonstrate cause and prejudice for the default, *Gray*, 518 U.S. at 162, or a "fundamental miscarriage of justice" in

---

[10] Petitioner also cannot seek review of these claims pursuant to either a writ of error *coram nobis*, *see People v. Gordon*, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see People ex rel. Allah v. Leonardo*, 565 N.Y.S.2d 331, 332 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted).

the absence of federal review, *Coleman*, 501 U.S. at 750. Once again, Petitioner has not even attempted establish cause for his procedural defaults, and thus the Court need not reach the issue of prejudice. *See Stepney*, 760 F.2d at 45. Further, Petitioner has again failed to demonstrate a sufficient probability that this Court's failure to review these claims will result in a "fundamental miscarriage of justice," *Edwards*, 529 U.S. at 451, as he has offered no new evidence demonstrating actual innocence, *Schlup*, 513 U.S. at 329; *Lucidore*, 209 F.3d at 114.

Accordingly, this Court is procedurally barred from reviewing Petitioner's state-law claims based on trial court's admission of Petrucelli's identification testimony and its failure to give a requested charge to the jury, and these claims are subject to dismissal on this ground.

## 2.   The Claims, in Any Event, Lack Merit.

In any event, even if this Court were to review Petitioner's third and fourth claims *de novo*, the claims would be subject to dismissal on their merits. In neither instance has Petitioner persuasively demonstrated a violation of state law, much less a violation that was so egregious that it could constitute a federal constitutional violation.

### a.   Admission of Identification Testimony

For his third claim, Petitioner argues that the trial court "deprived [Petitioner] of his due process right to a fair trial" by admitting Petrucelli's identification testimony without (i) requiring a "notice of intent" from the prosecution or (ii) conducting an "independent source determination." (Am. Pet., at 17-19.) With respect to the first of these arguments, Petitioner asserts that, in violation of Section 710.30(1)(b) of the New York Criminal Procedure Law, the prosecution failed to provide the defense with notice that Petrucelli would offer identification testimony. (*See* Am. Pet., at 17.) Section 710.30(1)(b) mandates that, where a witness has made a pretrial identification of a defendant, the prosecution, if it elects to offer identification

32

testimony from the witness at trial, must provide notice of its intent to do so to the defense. *See* N.Y.C.P.L. § 710.30(1)(b).[11]

In this case, however, Petrucelli never identified Petitioner through any pretrial procedure, such as a line-up, show-up, or photo array, and Section 710.30 was therefore inapplicable. *See Nash v. Ercole*, No. 08 Civ. 5293 (DLC), 2009 WL 2778247, at *12 (S.D.N.Y. Sept. 1, 2009) (finding Section 710.30 "inapplicable to [petitioner], because [the provision] requires that notice be given only if the witness has identified the defendant prior to trial . . . [and] [s]ince [the witness] had made no such pretrial identification, prior notice was not required"); *People v. Gilmore*, 898 N.Y.S.2d 717, 721 (3d Dep't 2010) (holding that because defendant "never participated in any police-initiated identification procedures, such as a showup or lineup, following his contact with defendant," the Section 710.30 notice requirement was inapplicable); *People v. Crespo*, 489 N.Y.S.2d 95, 96 (2d Dep't 1985) (holding that the prosecution was not "required to give defendant prior notice of [identification witness's] testimony because she had not previously participated in a showup, lineup, photographic identification or any other pretrial identification procedure, and therefore the notice requirements of CPL 710.30 were inapplicable").

Furthermore, it is well established that "[t]he Constitutional right to Due Process does not mandate pretrial notice of the prosecution's intention to offer identification testimony." *Wager v. Ercole*, No. 06 Civ. 0814 (GBD) (HBP), 2009 WL 6443854, at *4 (S.D.N.Y. June 12,

---

[11] Specifically, Section 710.30(1)(b) provides that, "[w]henever the people intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." N.Y.C.P.L. § 710.30(1)(b).

2009) (report and recommendation) (citing *Brown v. Harris*, 666 F.2d 782, 785 (2d Cir.1981)), *adopted by* 2010 WL 1904329 (S.D.N.Y. May 10, 2010). Thus, even assuming that the prosecution violated Section 710.30(1)(b), such a violation would not provide a cognizable basis for federal habeas relief. *See Arocho v. Walker*, 01 Civ. 1367 (NRB), 2001 WL 856608, at *3 (S.D.N.Y. July 27, 2001) (violation of N.Y.C.P.L. § 710.30(1)(a), which requires notice of any incriminating statements made by the defendant, does not implicate a constitutional right cognizable on habeas review); *Ventura v. Artuz*, 99 Civ. 12025 (AJP), 2000 WL 995497 at *3 (S.D.N.Y. July 19, 2000) (same).

Petitioner's second argument, that the trial court committed reversible error by admitting Petrucelli's identification testimony without conducting an "independent source determination" (Am. Pet., at 17-19), fares no better. An independent-source hearing "is necessary only when a hearing court has determined that pre-trial identification procedures were unduly suggestive." *Williams v. Artus*, 691 F. Supp. 2d at 529. In this case, as Petrucelli did not make a pretrial identification of Petitioner, no independent source hearing was required. *See Castillo v. Walsh*, 443 F. Supp. 2d 557, 568-69 (S.D.N.Y. 2006) (holding that, under New York law, trial court was not required to hold independent source hearing before admitting witnesses' identification testimony because witnesses did not undertake pretrial identification of defendant); *Garcia-Lopez v. Fischer*, No. 05 Civ. 10340 (RPP), 2007 WL 1459253, at *11 (S.D.N.Y. May 17, 2007) (holding that "[a]n independent source hearing is required only where 'a confirmatory identification [is made] after an illegal arrest'") (citing *Owens v. Taylor*, No. 04 Civ. 4909 (PKC), 2005 WL 1705071, at *6 (S.D.N.Y. 2005)).

In any event, due process, under the federal Constitution, requires no such hearing. *See Knight v. Kelley*, 189 F.3d 461 (2d Cir. 1999) (rejecting habeas petitioner claim "that the trial

34

court's refusal of his request to recall a witness at a pretrial 'independent source' hearing violated his Fourteenth Amendment right to due process," because "the Constitution does not require a state trial court to conduct a pretrial hearing on the admissibility of identification evidence whenever a defendant argues that a witnesses's identification was arrived at improperly") (citing *Watkins v. Sowders*, 449 U.S. 341, 349 (1981)).  Accordingly, even assuming that the trial court violated state law by failing to conduct such a hearing, that violation could not serve as a basis for habeas relief.

### b.     Allegedly Erroneous Jury Charge

For his fourth habeas claim, Petitioner contends that the trial court's denial of his request for a particular jury charge constituted reversible error.  (*See* Am. Pet., at 19-22.)  According to the Amended Petition, the prosecution offered only circumstantial evidence, and thus the trial court was required to provide the jury with a "circumstantial evidence jury charge." (*See id.*, at 19-21.)  Although he does not spell this out in his pleading, Petitioner is apparently referring to a charge that would have instructed the jury that the evidence would have needed to be sufficient to "establish guilty to a moral certainty."  *See, e.g.*, *People v. Daddona*, 81 N.Y.2d 990, 992 (1993) ("Whenever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty.").  On direct appeal, Petitioner argued that the absence of the requested charge "served to confuse deliberative process and shift burden of proof to the defense." (Pet. Supp. App. Br., Point II.)

In order to obtain a writ of habeas corpus based on an erroneous jury instruction, a petitioner must establish that the erroneous instruction violated a right guaranteed to him by federal law. *See Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001); *Sams v. Walker*, 18 F.3d 167,

35

171 (2d Cir. 1994). To do so, a petitioner bears the substantial burden of establishing that the jury instruction was not only erroneous, but it "so infected the entire trial that the resulting conviction violated due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quotation marks and citation omitted); *see also Delvalle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002) (stating that "a state prisoner making a claim of improper jury instructions faces a substantial burden"). Moreover, as "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law," a petitioner's burden of demonstrating a constitutional violation is "especially heavy" where the petitioner is challenging the trial court's failure to give a particular instruction. *Henderson*, 431 U.S. at 155.

In this instance, Petitioner has not even shown that the trial court's refusal to give the requested jury instruction was erroneous, under state law. Under New York law, a combination of direct and circumstantial evidence "does not qualify" for the type of circumstantial evidence instruction requested by Petitioner. *People v. Roldan*, 88 N.Y.2d 826, 827 (1996) (holding that, as case "involve[d] direct evidence," it "d[id] not qualify for the circumstantial evidence instruction"); *Norwood v. Atis*, 487 F. Supp. 2d 321, 333–34 (W.D.N.Y. 2007) ("[A]s prosecution's case rested upon both direct and circumstantial evidence, the court was not obligated to provide the requested . . . circumstantial evidence charge") (internal quotation marks and citation omitted). In this case, the trial court declined to give the charge requested by Petitioner, based on the fact that witnesses had testified to seeing Petitioner argue with and chase Sheppard, such that the case against Petitioner was not wholly circumstantial. (*See* Trial Tr. II, at 477.) Instead, the court gave the jury a more general charge that described the difference between direct and circumstantial evidence, and that informed the jury that both types of

36

evidence could be considered. (*See id.*, at 477-79.) The Appellate Division found no merit in Petitioner's argument that this charge was deficient. *See Strawder*, 843 N.Y.S.2d at 248.

Indeed, there would appear to be no basis for a finding that the trial court's charge was erroneous, under state law. Even apart from the testimony of witnesses who saw Petitioner arguing with, confronting, or chasing Sheppard, *see Nesbitt v. Williams*, No. 09–CV–0979 (JFB), 2011 WL 3471520, at *13 (E.D.N.Y. Aug. 8, 2011) (holding that witnesses' testimony regarding petitioner's escape constituted direct evidence), there was testimony in the record that Sheppard was overheard saying to Petitioner, "I can't believe you stabbed me" (Trial Tr. II, at 58-60, 63-64, 77), and that Petitioner was overheard telling Sheppard, "You dissed me." (*Id.*, at 356, 391, 428-29). Such statements constitute direct evidence. *See People v. Bretagna*, 298 N.Y. 323, 325-26 (1984). Based on the trial record as a whole, Petitioner has not even shown that the trial court's jury instruction was erroneous, much less that it violated his due process rights. Any claim for habeas relief based on the jury charge should therefore be dismissed.

### C.    Claims 5 and 6: Alleged Ineffective Assistance of Trial and Appellate Counsel

Petitioner's fifth and sixth habeas claims challenge the performance of his counsel, at trial and on Petitioner's direct appeal. With respect to trial counsel, Petitioner challenges his attorney's failure to raise objections to the admission of Petrucelli's testimony, specifically, (i) Petrucelli's testimony identifying Petitioner, and (ii) Petrucelli's recounting of the incriminating statement he overheard Sheppard make to Petitioner ("I can't believe you stabbed me"). As to appellate counsel, Petitioner argues that his counsel did not adequately address, on appeal, the hearsay issue raised by the prosecution's introduction of Petrucelli's testimony

regarding Sheppard's statement.  Neither of these ineffective-assistance claims can withstand scrutiny, under the governing standard.

### 1.    Trial Counsel

Petitioner's challenge to the conduct of his trial counsel was rejected on the merits by the Appellate Division, *see Strawder*, 843 N.Y.S.2d at 248, and that decision is thus entitled to deference under AEDPA.  For AEDPA purposes, established federal law regarding a defendant's constitutional right to the effective assistance of trial counsel is set out in *Strickland v. Washington*, 466 U.S. 668.  *See Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (holding that *Strickland* constitutes clearly established law).  Under *Strickland*, in order for a petitioner to demonstrate that he was deprived of his right to the effective assistance of counsel, the petitioner must first show that his counsel's performance was deficient; that is, it fell below an "objective standard of reasonableness," measured under "prevailing professional norms." *Strickland*, 466 U.S. at 688.  In determining whether such a showing has been made, the Court must accord substantial deference to counsel's strategic decisions and judgment. *See id.* at 689 (holding that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, under *Strickland*, the petitioner must affirmatively demonstrate prejudice by showing that "there is a reasonable probability that, but for counsel's [deficient performance], the result of the proceeding would have been different." *Id.* at 694; *accord Hill*, 474 U.S. at 56-59.  In this regard, it is not enough that counsel's deficiency "had some conceivable effect on the outcome of the proceeding[,] [as] [v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693 (citation omitted).  Rather, a "reasonable probability" that the result of the proceeding would have been different means "a probability sufficient to

38

undermine confidence in the outcome." *Id.* at 694. Thus, an attorney does not render ineffective assistance by failing to raise a meritless objection, as such an objection presumably would have been overruled and thus would not have changed the outcome of the case. *See Lockhart v. Fretwell*, 506 U.S. 364, 373 (1993) (holding that, as the objection upon which the ineffective-assistance-of-counsel claim was premised was meritless, petitioner could not sustain an ineffective-assistance claim).

The Court may reject an ineffective-assistance-of-counsel claim for failure to satisfy either prong of the *Strickland* standard, without reaching the other. *Strickland*, 466 U.S. at 697 (stating that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"); *see also Morales v. United States,* No. 98-3700, 1999 WL 1015641, at *1 (2d Cir. 1999) (finding it unnecessary to address "whether appellant's trial counsel was unreasonably deficient in his performance because any deficiency in this regard did not prejudice appellant").

As noted above, Petitioner principally raises two arguments regarding the allegedly inadequate performance of his trial counsel, both relating to alleged failures to object to Petrucelli's testimony. The first of these arguments – that his counsel should have sought to preclude Petrucelli's identification testimony because of the absence of a "notice of intent" and an "independent source hearing" – plainly fails under both prongs of the *Strickland* test, as, for the reasons discussed above (*see* Discussion Section II(B), *supra*), no such notice or hearing was required. Counsel's performance cannot be said to fall below professional norms for a failure to make a meritless, and thus futile argument. *See Lockhart,* 506 U.S. at 373; *see also United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) ("Counsel certainly is not required to engage in the filing of futile or frivolous motions."); *Gueits v. Kirkpatrick*, 612 F.3d 118, 124

39

(2d Cir. 2010) (rejecting ineffective-assistance-of-counsel claim for failure to object "because it was reasonable [for trial counsel] to conclude that any such objection would have been overruled by the trial court in this case"). In addition, as counsel's objection would likely have been overruled, it cannot be said that Petitioner suffered any prejudice from his trial counsel's failure to object. *See United States v. O'Neil*, 118 F.3d 65, 72-73 (2d Cir. 1997) (holding that "prejudice" prong of ineffective-assistance-of-counsel claim was not satisfied where the objections that petitioner claims should have been made would have been meritless).[12]

Petitioner's second argument hinges on his trial counsel's failure to challenge the prosecution's supposed position that the incriminating statement made by Sheppard to Petitioner, prior to Sheppard's death, was admissible at trial, under the "dying declaration" exception to the hearsay rule. (*See* Am. Pet., at 23.)[13] Here, too, the argument that Petitioner claims his counsel

---

[12] In his Amended Petition, Petitioner also asserts that his trial counsel was ineffective for failing "to object to improper bolstering of identification by [the] court." (Am. Pet., at 23.) Nowhere, however, does Petitioner explain what he means by this assertion. Assuming that Petitioner is attempting to claim that Petrucelli's identification testimony was also objectionable because it was cumulative to the similar testimony of other witnesses (*see id.*, at 22 (noting that the trial court ruled, after a pre-trial hearing, that "three civilian witnesses would be allowed to make in-court identifications of [Petitioner]")), the claim would fail, as the testimony from the different witnesses who observed Petitioner on the night of the stabbing was not entirely uniform. In any event, Petitioner has offered no authority to suggest that his counsel's failure to make a "bolstering" objection rendered counsel's performance constitutionally inadequate, or caused Petitioner to suffer prejudice within the meaning of *Strickland*.

[13] Although Petitioner does not provide the details of this argument in his fifth habeas claim, for ineffective assistance of trial counsel (*see* Am. Pet., at 23 (referring merely to trial counsel's alleged "failure to object to admission of hearsay testimony")), Petitioner elaborates on the argument in the context of his sixth claim, which principally challenges the conduct of his appellate counsel (*see id.*, at 26 (stating that [t]he prosecution . . . sought admission of a statement attributed to Sheppard (by its witness Octavio Petrucelli) as a 'dying dec[la]ration' exception to [the] hearsay rule, and counsel utterly and inexplicably allowed its introduction without objection or any significant protest"); *see also* Pet. Supp. App. Br., Point III; *Coram Nobis* Pet., at 5-6.)

40

should have made would likely have been rejected by the trial court as meritless, as, under New York law, Sheppard's statement to Petitioner, made after the stabbing, would appear to qualify as a "dying declaration." *See People v. Taylor*, 499 N.Y.S.2d 151 (2d Dep't 1986) (holding that testimony that victim wrote the name of the attacker in victim's blood was admissible under dying-declaration exception to hearsay rule, where the victim expressed clear sense of impending death); *Kolb v. Goord*, Nos. 97–CV–2279 (JBW), 03–MISC–0066 (JBW), 2003 WL 23199558, at *3-5 (E.D.N.Y. Nov. 25, 2003) (explaining that, under New York law, the "dying-declaration" exception to the hearsay rule requires the victim making the statement to have been "in extremis" and "under a sense of impending death, without any hope of recovery," and finding state court's admission of victim's statement under this hearsay exception to have been reasonable, where victim had identified his assailants after being beaten and stabbed).

Given that the trial court would have likely overruled the hearsay objection that, according to Petitioner, his trial counsel should have raised, Petitioner again cannot satisfy either prong of the *Strickland* analysis.  Trial counsel's decision not to raise the likely-futile objection would not have fallen below an objective standard of reasonableness, *see Gueits*, 612 F.3d at 124, and Petitioner cannot demonstrate that he suffered any prejudice from the trial counsel's failure to object, *see O'Neil*, 118 F.3d at 72-73.

Overall, the Appellate Division's decision rejecting each aspect of Petitioner's claim for ineffective assistance of trial counsel was neither contrary to, nor an unreasonable application of clearly established federal law, as set forth in *Strickland*, and that claim should accordingly be dismissed.  *See* 28 U.S.C. § 2254(d).

### 2.   Appellate Counsel

Finally, Petitioner argues that his appellate counsel was ineffective for failing to challenge the prosecution's alleged change in legal arguments regarding the admissibility of hearsay. (*See* Am. Pet., at 25-28.)  As noted above, Petitioner asserts that, at trial, the prosecution appeared to take the position that Sheppard's statement was admissible as a "dying declaration," but, on appeal, the prosecution argued that the statement was properly admitted in evidence as an "excited utterance."  Petitioner claims that appellate counsel did not do enough to point out to the Appellate Division that this was a new position, or to argue that, in any case, the prosecution had not established the requisite state of mind for either hearsay exception.  (*See id.*) Petitioner raised these claims in his state *coram nobis* proceeding, where they were rejected, without opinion, by the Appellate Division.  (*See* 6/30/09 *Coram Nobis* Decision.)  Even on *de novo* review, these claims cannot survive.

Under the *Strickland* test – which applies to appellate counsel, as well as trial counsel, *see Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992) – appellate counsel does not have a duty to advance every available nonfrivolous argument on appeal, *see Jones v. Barnes*, 463 U.S. 745, 754 (1983).  A petitioner, however, may demonstrate that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  A federal or a state-law claim that was improperly omitted from an appeal may form the basis for an ineffective assistance of appellate counsel claim, "so long as the failure to raise the . . . claim fell outside the wide range of professionally competent assistance."  *Id.* (quotations omitted).

Nonetheless, deference must be accorded to an appellate counsel's strategic decision to focus an appeal on select issues, instead of raising every potentially "colorable" claim. *Jones*, 463 U.S. at 753-54. In other words, appellate counsel is not required to "press nonfrivolous points, . . . if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This is because "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Id.* at 751-52. A brief that raises every colorable claim "runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

In this case, Petitioner's claim for ineffective assistance of appellate counsel fails for the simple reason that Petitioner has not shown that the arguments that counsel failed to raise on direct appeal were meritorious. As a threshold matter, even though Petitioner characterizes the prosecution as having introduced Sheppard's statement at trial as a "dying declaration," the prosecution never needed to make any argument on the issue at trial, as Petitioner's counsel did not actually raise a contemporaneous objection to the admission of the statement. (*See* Trial Tr. II, at 63-64.) For this reason, the prosecution did not actually "change its position," on appeal. Even beyond that, the statement in question, which, as discussed above, likely qualified as a "dying declaration" under state law, likely also qualified as an "excited utterance." *See People v. Vega*, 771 N.Y.S.2d 30, 38 (1st Dep't 2004) (stating that, "[g]enerally, an excited utterance is one made 'under the immediate and uncontrolled domination of the senses, and during the brief period when consideration of self-interest could not have been brought fully to bear by reasoned reflection"); *see also Taylor*, 499 N.Y.S.2d at 152 (finding statement by victim, identifying attacker, to be both a "dying declaration" and also an "excited utterance"); *People v.*

43

*Brown*, 70 N.Y.2d 513, 520-21 (1987) (holding that statements made by dying victim, 30 minutes after having been shot, in response to questions by police officer, were admissible under excited-utterance exception to hearsay rule).

Moreover, even without the assistance of appellate counsel, Petitioner was able to raise his claims regarding the purported inadmissibility of Sheppard's statement on his own, in his *pro se* supplemental brief to the Appellate Division, and the Appellate Division considered those claims and rejected them on their merits. *See Strawder*, 843 N.Y.S.2d at 248. The very fact that the appellate court denied the claims shows that appellate counsel's conduct in omitting them from Petitioner's counseled brief did not fall below objectively reasonable standards. Further, the fact that Petitioner did not prevail on these claims, when raised, shows that he suffered no prejudice as a result of appellate counsel's failure to raise them. *See Hightower v. Kelly*, 657 F. Supp. 516, 517-18 (S.D.N.Y. 1987) (finding that "petitioner [had] failed to demonstrate prejudice because all of the arguments petitioner claim[ed] his counsel should have raised on appeal were actually raised, either by counsel or by petitioner himself in his *pro se* brief to the Appellate Division"); *Lowman v. New York*, No. 09-CV-0058T, 2011 WL 90996, at *15 (W.D.N.Y. Jan. 11, 2011) (rejecting argument that appellate counsel was ineffective for failing, on direct appeal, to raise claims that had been raised by the petitioner in a *pro se* supplemental brief and that were rejected by the Appellate Division); *Joyner v. Ercole*, No. 06 Civ. 0486 (RJD), 2010 WL 4457711, at *7 (E.D.N.Y. Nov. 1, 2010) (same).

Accordingly, Petitioner's claim for ineffective assistance of appellate counsel cannot survive analysis under *Strickland*, and should be dismissed.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Petitioner's Amended Petition be DISMISSED in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (adding another three (3) days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondents' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities cited therein

45

that are unpublished or reported exclusively on computerized databases] as are cited in a

decision of the Court and were not previously cited by any party.").

Dated:  New York, New York
        August 29, 2012

                                        Respectfully submitted,


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Hon. George B. Daniels, U.S.D.J.

Mr. William Strawder
03-A-6364
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

Patricia Jean Curran, Esq.
New York County District Attorney's Office
1 Hogan Place
New York, NY 10013